TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Tel: (718) 762-1324
*Attorneys for the Plaintiff and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
JEANNETTE FIGUEROA,
*on behalf of herself and others similarly situated,*
                              Plaintiff,

v.

MAYFLOWER INTERNATIONAL HOTEL GROUP
    INC
    d/b/a Mayflower Hotel and
    d/b/a Wyndham Garden,
YAN ZHI HOTEL MANAGEMENT INC
    d/b/a Mayflower Hotel and
    d/b/a Howard Johnson Hotel,
WEIHONG HU
    a/k/a Wei Hong Hu, and
HENLEY LIANG,
                              Defendants.
------------------------------------------------------------------x

**Case No. 23-cv-04729**

**FED. R. CIV. P. 23 CLASS ACTION**

<u>**AMENDED COMPLAINT**</u>

**DEMAND FOR JURY TRIAL**

Plaintiff JEANNETTE FIGUEROA (hereinafter "Plaintiff" or "Jeannette"), on her own behalf and on behalf other similarly situated, by and through her attorneys, Troy Law, PLLC hereby brings this complaint against Defendants MAYFLOWER INTERNATIONAL HOTEL GROUP, INC. d/b/a Mayflower Hotel d/b/a Wyndham Garden (hereinafter "Wyndham Garden"); YAN ZHI HOTEL MANAGEMENT INC d/b/a Mayflower Hotel d/b/a Howard Johnson Hotel (hereinafter "Howard Johnson Hotel) (collectively with Wydham Garden referred to as "Corporate Defendants"); WEIHONG HU a/k/a Wei Hong Hu (hereinafter "Werihong Hu); and HENLEY LIANG (hereinafter "Henley Liang") (collectively with Weihong Hu referred to as "Individual Defendants") (collectively with Corporate Defendants referred to as "Defendants") and alleges as follows:

## **INTRODUCTION**

1. JEANNETTE FIGUEROA brings this action on behalf of herself and others similarly situated against Defendants for hostile work environment and adverse actions, including discriminatory acts that JEANNETTE FIGUEROA faced at the hands of Defendants due to her gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the New York State Human Rights Law, NY Exec. L. § 290 *et seq.* ("NYSHRL") and New York City Human Rights Law, NYC Admin § 8-101 *et seq.* ("NYCHRL").

2. JEANNETTE FIGUEROA is entitled to recover: (1) up to $300,000.00 as compensatory damages for front pay and for nonpecuniary losses including emotional pain stemming from sexually-discriminatory hostile work environment and/or adverse employment action pursuant to Section 1981a(b)(3)(D) of the United States Code; (2) back pay and reinstatement as equitable relief, and compensatory damages for front pay and nonpecuniary losses including emotional pain stemming from sexually-discriminatory hostile work environment and/or adverse employment action, and prejudgment and post-judgment interest, pursuant to Section 297 of the NYSHRL; and (3) back pay and reinstatement as equitable relief, and compensatory damages for front pay and nonpecuniary losses including emotional pain stemming from sexually-discriminatory hostile work environment and/or adverse employment action, and prejudgment and post-judgment interest, and reasonable attorney fees and costs pursuant to Section 8-502 of the NYCHRL.

3. On or about February 13, 2022, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging sex and/or gender discrimination.

4. On June 8, 2023, Plaintiff received a Notice of Right to Sue from the EEOC. More than 180 days have passed since the filing of the charge and the EEOC terminated its processing of the charge.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this controversy pursuant to Section 2000e-5(f)(3) of Title VII and 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state- and municipal-law claims pursuant to 28 U.S.C. § 1367(a).

6. The Court has personal jurisdiction over the Defendants because they are citizens and residents of the State of New York who are domiciled in and conduct business in the State of New York.

7. Venue is proper in the United States District Court for the Eastern District of New York pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the Eastern District of New York, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of New York.

## PLAINTIFF

8. JEANNETTE FIGUEROA was employed by Defendants to work as an Assistant Manager at the Howard Johnson Hotel, located at 38-59 12th Street, Long Island City, NY 11101.

9. JEANNETTE FIGUEROA is female.

## DEFENDANTS

*Corporate Defendants*

10. Wyndham Garden is a domestic business corportion registered and with a principal place of business at 61-27 186th Street, Fresh Meadows, NY 11365.

11. Wyndham Garden was, during the period relevant to this lawsuit, a business

engaged in inerstate or foreign commerce, that employed no fewer than fifteen (15) employees.

12. Howard Johnson Hotel is a domestic business corportion registered at 61-27 186th Street, Fresh Meadows, NY 11365 and with a principal place of business at 38-59 12th Street, Long Island City, NY 11101.

13. Howard Johnson Hotel was, during the period relevant to this lawsuit, a business engaged in inerstate or foreign commerce, that employed no fewer than fifteen (15) employees.

14. Wyndham Garden and Howard Johnson Hotel were, during the period relevant to this lawsuit, an enterprise that employed no less than fifteen (15) employees.

*Owner/Operator Defendants*

15. WEIHONG HU is the owner of and the service of process receiver for Howard Johnson Hotel and the Chief Executive Officer for both Corporate Defendants.

16. WEIHONG HU was, throughout the period relevant to this lawsuit, a day-to-day manager for both Corporate Defendants and was known to the plaintiff as the boss.

17. WEIHONG HU, throughout the period relevant to this lawsuit, hired employees who worked at both corporate Defendants locations, and had the power to fire them; determined the schedules and conditions of employment for employees who worked for Corporate Defendants; determined the pay rates for employees who worked for Corporate Defendants, and gave them their pay; and kept records for Corporate Defendants.

18. WEIHONG HU acted willfully, intentionally, and maliciously; is individually liable for discrimination under NYSHRL and NYCHRL; and is jointly and severally liable with Corporate Defendants.

19. HENLEY LIANG is the manager at the Howard Johnson Hotel.

20. HENLEY LIANG was, throughout the period relevant to this lawsuit, a day-to-day manager at both Corporate Defendants and was known to plaintiff as the boss.

21. HENLEY LIANG interviewed JEANNETTE FIGUEROA.

22. HENLEY LIANG hired JEANNETTE FIGUEROA.

23. HENLEY LIANG throughout the period relevant to this lawsuit hired employees who worked at both corporate Defendants locations and had the power to fire them; determined the schedules and conditions of employment for employees who worked at Corporate Defendants; determined the pay rates for employees who worked at Corporate Defendants and gave them their pay; and kept records for Corporate Defendants.

24. HENLEY LIANG acted willfully, intentionally, and maliciously; is individually liable for discrimination under NYSHRL and NYCHRL; and is jointly and severally liable with Corporate Defendants.

## CLASS ACTION ALLEGATIONS

25. JEANNETTE FIGUEROA brings her state- and municipal-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt workers employed by Defendants over the three (3) years preceding the filing of this Complaint, through entry of judgment in this case (the "Class") on behalf of current and former non-exempt workers who were subject to a hostile work environment and/or adverse employment actions because of their sex and/or gender.

26. The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

*Numerosity*

27. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

28. Although the precise number of such persons is unknown, and the facts on which

the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

### *Commonality*

29.     There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed or controlled the terms and conditions of employment of the Class members within the meaning of New York State and City law; (2) whether the Class members were subject to discrimination because of their sex, and (3) whether the work environment is hostile and/or adverse employment actions taken.

### *Typicality*

30.     JEANNETTE FIGUEROA's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

31.     All the Class members were subject to the same policy and practice of creating and fostering a hostile work environment.

### *Adequacy*

32.     JEANNETTE FIGUEROA is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

33.     JEANNETTE FIGUEROA is represented by attorneys who are experienced and competent in representing plaintiffs in employment discrimination litigation actions.

### *Superiority*

34.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where

individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

35. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

36. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

37. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

38. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

39. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

40. Upon information and belief, Defendants and other employers throughout the state violate the NYSHRL, and employers throughout New York City violate the NYCHRL.

41. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

42. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

43. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF FACTS

*Wyndham Hotel have formed a Single Integrated Enterprise with Howard Johnson Hotel*

44. Wyndham Hotel and Howard Johnson were jointly operated by the Individual defendant WEIHONG HU, who centralized, controlled, and implemented a unified scheme of labor relations.

45. WEIHONG HU is the Chief Executive Officer for both Corporate Defendants.

46. Plaintiff was paid interchangeably by both corporations and received pay stubs that would name either corporation as the payor.

47. Defendants advertise (on business cards) the Corporate Defendants as an enterprise.

48. The enterprise comprised of the Corporate Defendants' businesses engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

49. The enterprise purchased, handled, and moved goods in interstate commerce.

50. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Corporate Defendants.

### *Hostile Work Environment and Adverse Employment Action Claims*

51. Plaintiff was employed by Defendants as a full-time Assistant Manager from on or around April 02, 2021 to on or around September 15, 2021 at the Howard Johnson Hotel located at 38-59 12th Street, Long Island City, NY 11101.

52. The Howard Johnson hotel had 11 floors and 140 rooms.

53. During Plaintiff's employment with the Howard Johnson Hotel, she was treated worse than most of the other Howard Johnson Employees due to her sex.

54. Throughout Plaintiff's employment with Defendants, Plaintiff was constantly catcalled and sexually harassed by residents.

55. Plaintiff was also subject to verbal and physical incidents and gestures from residents due to her gender.

56. Plaintiff's coworker, DAVID, who was a man, and similarly worked as an Assistant Manager, did not get catcalled, sexually harassed or subject to verbal and physical indecent gestures.

57. Plaintiff reported incidents of sexual harassment and sexual violence to both the case managers that were stationed at the Howard Johnson Hotel in the City of New York and the Howard Johnson management staff.

58. However, neither the case managers from the City of New York nor the Howard Johnson management staff acted upon their promise to protect her and other employees that worked there from the verbal epithets and abuse from the residents.

59. There were numerous occasions where Plaintiff and the workers she managed feared for their lives due to the residents behaving inappropriately or in a violent manner towards them or in general.

60. On April 3, 2021, Plaintiff got hit with a "Wet Floor" sign from a resident named BEASLEY.

61. BEASLEY was having an argument with one of the social workers and out of anger threw a "Wet Floor" sign from the mezzanine that struck while Plaintiff was posted in the Lobby.

62. At the time, Plaintiff wanted to file a police report, but the security guard led Beasley to stand right before her and beg for Plaintiff to not file a police report.

63. Knowing how dangerous BEASLEY could be when he was agitated and afraid of being retaliated against, Plaintiff chose to not file the police report.

64. Plaintiff did report the incident to the Howard Johnson Hotel Management and the case managers that were present in the hotel.

65. Defendants' General Manager and Plaintiff's supervisor JANICE TAN told Plaintiff that she laughed with WEIHONG WU at Plaintiff's predicament when they reviewed the video footage.

66. JANICE TAN stated that she liked what Plaintiff was wearing in the video, and found the video funny.

67. No measure was taken in the aftermath of the incident to protect Plaintiff from future harm.

68. Plaintiff had to endure BEASLEY's presence at the end of every shift.

69. In fact, Defendants' lack of action resulted in BEASLEY frequently coming up to Plaintiff and harassing her.

70. BEASLEY made comments to Plaintiff like "I want to date you. You're pretty, why don't you talk to me."

71. Throughout Plaintiff's employment with Mayflower, BEASLEY offered to accompany Plaintiff from the hotel to the F train station.

72. Each worknight, when Plaintiff refused, BEASLEY threw a tantrum and kicked the air.

73. Plaintiff gave in to BEASLEY's demand to walk her to the train station due to fear of the violent behavior she knew he was capable of and the lack of protection and action from Defendants.

74. She reported Beasley's behavior to defendant HENLEY LIANG but he failed to take any corrective or preventative action.

75. Further, she reported this to case manager JASON FLO, who instead of helping, insinuated to others that JEANNETTE FIGUEROA enjoyed Beasley's advances.

76. On June 04, 2021, JEANNETTE FIGUEROA was rendered unconscious when one of the residents came through the lobby and threw a picnic table at the front counter that struck JEANNETTE FIGUEROA.

77. The security supervisor did not offer to help when the incident occurred and when she complained to the security supervisor, he shrugged his shoulders and ignored her.

78. Howard Johnson Management did not compensate JEANNETTE FIGUEROA for the injuries that she sustained while working.

79. As part of her front desk duties, JEANNETTE FIGUEROA had to endure residents coming up to Plaintiff and making misogynist and sexually-suggestive comments like: "I want to bust a nut in your face," and "I'm going to masturbate so I can have a good sleep so I can think of you.

80. Plaintiff frequently complained of the sexual innuendos and derogatory terms, Manager HENLEY LIANG and the case managers.

81. However, Manager HENLEY LIANG and the case managers brushed off Plaintiff's report and told her to bear with it.

82. Resident JAMAL frequently targeted Plaintiff and called her "bitch" and verbalized derogatory phrases through his teeth to intimidate Plaintiff.

83. JAMAL's gait intentionally mimicked the way a dog would scratch his feet with his paws to further intimidate Plaintiff.

84. JAMAL further spit in the face of another female coworker, FIONA.

85. Despite reporting the spitting incident between JAMAL and FIONA to case manager CHEEK, no corrective action was taken.

86. During Plaintiff's employment, another shelter resident frequently urinated in the lobby with his penis on display.

87. This same shelter resident frequently throughout Plaintiff's employment threw his card key at Plaintiff and said, "Do my card, bitch."

88. In response to these incidents, Plaintiff frequently told the case manager, JASON FLO: "Flo, he's cursing at me, I'm not going to do the card."

89. Despite multiple reports of the urination, and verbal abuse from the shelter residents, Defendants did not take any action.

90. Defendants declined to take preventative or corrective actions to protect JEANNETTE FIGUEROA from the resident.

91. When JEANNETTE FIGUEROA sat at the front desk many of the residents would make sexual innuendos toward her, curse at her, and call her derogatory terms.

92. She reported this to both the Howard Johnson Management Staff (including Henry Liang) and the case managers.

93. JEANNETTE FIGUEROA was told to "not worry about it" and that she needed to understand that the residents were suffering from mental illnesses.

94. In the course of JEANNETTE FIGUEROAs duties, she supervised cleaning ladies. She would constantly be required to become involved when the residents became violent or inappropriate with the cleaning ladies that reported to her.

95. This included the residents watching pornography in front of the cleaning ladies and refusing to abide by the regulations of the shelter, namely that residents must be out of the room during the cleaning process.

96. JEANNETTE FIGUEROA had to file a police report when one of the residents spat on one of the cleaning ladies and harassed her.

97. The cleaning ladies that reported to JEANNETTE FIGUEROA stated that residents were making sexual gestures to them or would be naked in their room while they were trying to clean the rooms on a consistent basis.

98. During her employment, JEANNETTE FIGUEROA came to the aid of the cleaning ladies she was charged with supervising and confront the residents in hostile environments. Security guards who were present and contracted told Jeannette that they were there for the shelter, not to help protect Jeannette or other female employees.

99. JEANNETTE FIGUEROA reported the misconduct by the residents to the Shelter Director, but rather than helping JEANNETTE FIGUEROA the Director instructed JEANNETTE FIGUEROA not to call the police or file any reports.

100. When Jeannette informed HENLEY LIANG of the frequent incidents and her desire to file reports she was told not report because HENLEY LIANG did not want Mayflower to lose the city contract.

101. JEANNETTE FIGUEROA requested a transfer to another hotel location because of the overtly hostile, violent, and sexual environment.

102. Instead of declining JEANNETTE FIGUEROA's request, HENLEY LIANG stated that there were no openings.

103. JEANNETTE FIGUEROA later found that HENLEY LIANG's statement was not true.

104. Ultimately Plaintiff quit her job in fear of her safety and because of the pervasiveness and severity of the sexual harassment as well as physical danger that she had to endure and Defendants' inaction.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violation of Title VII of the Civil Rights Act– Discrimination Based on Sex Brought on behalf of Plaintiff against Corporate Defendants]**

105. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106. Title VII makes it unlawful for an employer to "… discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex…" 42 U.S.C. § 2000e-2(a)(1).

107. "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when …such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)(3).

108. The discriminatory conduct towards Plaintiff at her place of employment constitutes sexual harassment and was severe and pervasive enough to create an objectively hostile or abusive work environment.

109. Defendants knew their failure to take corrective action constituted unlawful sex discrimination and showed reckless disregard with respect to Plaintiff's rights.

110. Plaintiff suffered and continues to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

## COUNT II.
### [Violation of NYSHRL – Discrimination Based on Sex Brought on behalf of Plaintiff against All Defendants]

111. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112. NYSHRL states that it is unlawful for "… an employer or licensing agency, because of an individual's … sex,… to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1).

113. It further states that it is unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6).

114. Defendants were Plaintiff's employer and intentionally discriminated against Plaintiff because of her sex.

115. Individual Defendants aided in the discrimination of Plaintiff as described by the acts and practices complained of.

116. Individual Defendants omitted to take corrective action intentionally and willfully.

117. As a result, Plaintiff suffered and continues to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

## COUNT III.
**[Violation of NYCHRL – Discrimination Based on Gender
Brought on behalf of Plaintiff against All Defendants]**

118. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

119. Defendants further violated NYCHRL, Administrative Code of the City of New York 8-101, et seq., by the discriminatory acts and practices complained of above and by unlawfully creating a severe and hostile work environment where retaliation and gender discrimination are encouraged and/or tolerated.

120. Defendants' omissions were intentional and willful.

121. As a result, Plaintiff suffered and continues to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, and on the Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a) Back pay and/or reinstatement as equitable relief, and compensatory damages in an amount to be determined at trial for front pay and for nonpecuniary losses including emotional pain stemming from sex discrimination and sexual harassment under Title VII;

b) Reasonable attorney fees and costs pursuant to Section 2000e-5(k) of Title VII;

c) Prejudgment and post-judgment interest under Title VII;

d) Back pay and/or reinstatement as equitable relief, and compensatory damages in an amount to be determined at trial for front pay and nonpecuniary losses including emotional pain stemming from sex discrimination and sexual harassment, and prejudgment and postjudgment interest, pursuant to Section 297 of the NYSHRL;

  e)  Back pay and/or reinstatement as equitable relief, and compensatory damages in an amount to be determined at trial for front pay and nonpecuniary losses including emotional pain stemming from sex discrimination and sexual harassment, and prejudgment and postjudgment interest, and reasonable attorney fees and costs pursuant to Section 8-502 of the NYCHRL;

  f)  The cost and disbursements of this action;

  g)  An award of prejudgment and post-judgment fees;

  h)  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury on all questions of fact.

Dated: Flushing, New York
   October 20, 2023

                TROY LAW, PLLC
                *Attorneys for the Plaintiff and potential Rule 23 Class*

                */s/ John Troy*
                John Troy
                Aaron Schweitzer
                Tiffany Troy